UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JACOB WHEELER, | : |
| Plaintiff, | : Case No._____ |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **THE FEDERAL SECURITIES LAWS** |
| SOUTHWESTERN ENERGY COMPANY, JOHN D. GASS, S.P. JOHNSON, IV, CATHERINE A. KEHR, GREG D. KERLEY, JON A. MARSHALL, PATRICK M. PREVOST, ANNE TAYLOR, DENIS J. WALSH, III, and WILLIAM J. WAY, | : JURY TRIAL DEMANDED |
| Defendants. | : |

---

Plaintiff Jacob Wheeler ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.       This action is brought by Plaintiff against Southwestern Energy Company ("SWN" or the "Company") and the members of SWN's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a stock issuance proposal ("Stock Issuance Proposal"), pursuant to which SWN will issue shares in connection with its acquisition of Indigo Natural Resources LLC ("Indigo") through

SWN's subsidiary Ikon Acquisition Company, LLC ("Merger Sub") (the "Proposed Transaction").

2. On June 2, 2021, SWN issued a press release announcing that it had entered into an Agreement and Plan of Merger dated June 1, 2021 with Indigo (the "Merger Agreement"). Under the terms of the Merger Agreement, SWN will acquire Indigo for: (i) $400 million in cash (the "Cash Consideration"); (ii) 339,270,568 shares of SWN common stock, having an aggregate market value of approximately $1.6 billion (the "Stock Consideration"); and (iii) $700 million of assumed 5.375% senior notes due 2029 (together, the "Merger Consideration"). The Proposed Transaction is valued at approximately $2.7 billion.

3. On July 20, 2021, SWN filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that SWN stockholders vote in favor of the Stock Issuance Proposal, omits or misrepresents material information concerning, among other things: (i) SWN's, Indigo's and the pro forma company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs"); and (ii) Goldman Sachs's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SWN stockholders need such information in order to make a fully informed decision whether to vote in favor of the Stock Issuance Proposal.

4. In short, unless remedied, SWN's public stockholders will be forced to make a voting decision on the Stock Issuance Proposal without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to

enjoin the stockholder vote on the Stock Issuance Proposal unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, SWN's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of SWN.

9. Defendant SWN is a Delaware corporation, with its principal executive offices located at 10000 Energy Drive, Spring, Texas 77389. SWN is an independent energy company engaged in natural gas, natural gas liquids ("NGLs") and oil exploitation, development, production and marketing. SWN's shares trade on the New York Stock Exchange under the ticker symbol "SWN."

10. Defendant John D. Gass ("Gass") has been a director of the Company since 2012.

11. Defendant S.P. Johnson, IV ("Johnson") has been a director of the Company since 2020.

12. Defendant Catherine A. Kehr ("Kehr") is Chairman of the Board and has been a director of the Company since 2011.

13. Defendant Greg D. Kerley ("Kerley") has been a director of the Company since 2010. Defendant Kerley previously served as Executive Vice President ("EVP") and Chief Financial Officer ("CFO") of the Company until October 2012.

14. Defendant Jon A. Marshall ("Marshall") has been a director of the Company since 2017.

15. Defendant Patrick M. Prevost ("Prevost") has been a director of the Company since 2017.

16. Defendant Anne Taylor ("Taylor") has been a director of the Company since 2018.

17. Defendant Denis J. Walsh, III ("Walsh") has been a director of the Company since 2019.

18. Defendant William J. Way ("Way") has been President, Chief Executive Officer ("CEO"), and a director of the Company since 2016. Defendant Way also previously served as President and Chief Operating Officer ("COO") of the Company from December 2014 to January 2016, and as EVP and COO of the Company from October 2011 to December 2014.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Indigo is one of the largest natural gas producers in the Haynesville Shale and the third largest private natural gas producer in the U.S. Indigo is an experienced operator, focused in northern Louisiana with direct access to Gulf Coast markets and associated industrial and liquefied natural gas ("LNG") demand growth. Indigo is headquartered in Houston, Texas.

21. Merger Sub is a Delaware corporation and an indirect wholly owned subsidiary of Indigo.

<b>SUBSTANTIVE ALLEGATIONS</b>

**<u>Background of the Company</u>**

22. SWN is an independent energy company engaged in exploration, development and production activities, including the related marketing of natural gas, oil and NGLs produced in Company operations. SWN is a holding company whose assets consist of direct and indirect ownership interests in, and whose business is conducted substantially through, its subsidiaries. The Company is currently focused on the development of unconventional natural gas reservoirs located in Pennsylvania, Ohio, and West Virginia, with operations in northeast Pennsylvania ("Northeast Appalachia") primarily focused on the unconventional natural gas reservoir known as the Marcellus Shale, and operations in West Virginia, southwest Pennsylvania and Ohio ("Southwest Appalachia") focused on the Marcellus Shale, the Utica and the Upper Devonian unconventional natural gas, oil and NGL reservoirs.

**<u>The Proposed Transaction</u>**

23. On June 2, 2021, SWN issued a press release announcing the Proposed Transaction, which states, in relevant part:

> SPRING, Texas -- Southwestern Energy Company (NYSE: SWN) (the "Company" or "Southwestern") today announced that it has entered into a definitive merger agreement with Haynesville producer Indigo Natural Resources, LLC ("Indigo") under which it will acquire Indigo for approximately $2.7 billion.

The transaction is expected to close early in the fourth quarter of 2021, subject to customary closing conditions. Transaction highlights include:

- Increases projected cumulative free cash flow to approximately $1.2 billion from 2021 to 2023;
- Improves estimated 2022 free cash flow per share ~30% and cash flow per debt adjusted share ~15%;
- Accelerates expected delivery of sustainable leverage ratio below 2.0x in 2021 and progressing to 1.7x in 2022;
- Expands 2022 estimated margins by 12% resulting from low cost access to premium markets in the growing Gulf Coast LNG corridor;
- Complements existing portfolio, increases high-return dry gas inventory with over 1,000 locations added; and
- Leverages operational expertise of integrating and developing operated, large-scale natural gas assets; increases net production to over 4 Bcfe per day, consisting of approximately 85% natural gas.

"Today we are proud to announce another accretive transaction that will benefit the Company's shareholders for years to come. This acquisition enhances Southwestern's position as a leading natural gas producer and aligns with our disciplined strategy to generate free cash flow, enhance our balance sheet, optimize performance and build scale. Indigo has done a terrific job building its business, and its balance sheet strength, low cost structure and high-quality acreage position in the core of the Haynesville play accelerates the delivery of our strategic goals," said Bill Way, Southwestern Energy President and Chief Executive Officer.

Way continued, "Our footprint now extends across the two premier natural gas basins in the country and includes top-tier dry gas and liquids rich inventory. The value of this high-quality inventory is further enhanced by our diverse transportation portfolio providing access to premium markets in the Gulf Coast and within Appalachia. Southwestern Energy's unique combination of a strong balance sheet, high-quality assets and resilient vertically integrated business is positioned to deliver long-term value creation."

Indigo is one of the largest private US natural gas producers, with core dry gas assets across the stacked pay Haynesville and Bossier zones in northern Louisiana. Its high-margin assets are located in close proximity to the growing demand in the Gulf Coast LNG corridor. Indigo currently produces 1.0 Bcf per day net and expects to produce approximately 1.1 Bcf per day net upon closing. As of March 31, 2021, and adjusted for the recent sale of its non-core Cotton Valley assets, Indigo had $631 million of net debt and a leverage ratio of 1.1 times.

**Outlook**

Southwestern Energy expects to invest at maintenance capital levels again in 2022, with activity across all of its operating areas. On the acquired acreage, the Company expects to run a 4 rig program in 2022, placing 30 to 40 wells to sales. With a maintenance capital program, the Company projects 14 years of economic inventory at current strip prices across its assets in Appalachia and Haynesville.

Preliminary 2022 estimates for certain key metrics of the newly combined enterprise are shown below. Estimates are based on $2.75 NYMEX and $58 WTI.

| Preliminary 2022 Estimates | SWN | SWN + Indigo | Increase (Decrease) [1] |
|---|---|---|---|
| EBITDA (non-GAAP) ($ in billions) | $1.3 | $2.0 | 54% |
| Net cash flow (non-GAAP) ($ in billions) | $1.2 | $1.9 | 58% |
| Capital investment ($ in billions) | $0.9 | $1.4 | 56% |
| Free cash flow (non-GAAP) ($ in billions) | $0.24 | $0.47 | 96% |
| Net debt to EBITDA (non-GAAP) | 2.1x | 1.7x | (0.4x) |
| E&P margin ($ per Mcfe) [2] | $1.15 | $1.30 | 12% |
| Net Production (Bcfe/day) | 3.0 | 4.1 | 37% |

Synergies are expected to be approximately $20 million in G&A reductions with further operational and financial cost savings anticipated. There are opportunities for additional value creation by leveraging the Company's core competencies for large scale, operated natural gas development, including its vertically integrated business, reservoir and base decline optimization, and use of innovation and data analytics. The Company's increased scale provides the opportunity for credit upgrades and cost of capital reductions, which would deliver additional accretion to financial performance.

**Transaction and Timing**

The total consideration of $2.7 billion will be comprised of $400 million in cash, approximately $1.6 billion in SWN common stock and $700 million of assumed 5.375% senior notes due 2029.

The stock consideration consists of approximately 339 million shares of Southwestern Energy common stock, calculated utilizing the 30-day volume-weighted average price as of May 28, 2021, of $4.72. No Indigo shareholder will receive more than 10% of Southwestern Energy's pro forma outstanding shares in connection with this transaction.

The transaction was unanimously approved by each of Southwestern Energy's and Indigo's board of directors. The transaction is expected to close early in the fourth quarter of 2021, subject to regulatory approvals, customary closing conditions and the approval by Southwestern Energy's shareholders.

**Advisors**

Goldman Sachs & Co. LLC served as the exclusive financial advisor to Southwestern and Skadden, Arps, Slate, Meagher & Flom LLP serve as legal advisor. Credit Suisse Securities (USA) LLC served as the exclusive financial advisor to Indigo and Kirkland & Ellis LLP served as legal advisor.

**The Proxy Statement Contains Material Misstatements and Omissions**

24. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to SWN's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

25. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) SWN's, Indigo's and the pro forma company's financial projections and the data and inputs underlying the financial analyses performed by the Company's financial advisor Goldman Sachs; and (ii) Goldman Sachs's potential conflicts of interest. Accordingly, SWN stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning SWN's, Indigo's and the Pro Forma Company's Financial Projections and Goldman Sachs's Financial Analyses***

26. The Proxy Statement omits material information regarding the financial projections for SWN, Indigo and the pro forma company. Specifically, the Proxy Statement fails to disclose the line items underlying: (i) EBITDA; (ii) cash flow from operations; and (iii) discretionary free cash flow.

27. The Proxy Statement also describes Goldman Sachs's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman Sachs's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, SWN's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman Sachs's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to SWN's stockholders.

28. With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis for Indigo*, the Proxy Statement fails to disclose: (i) the estimates of the unlevered free cash flow for Indigo from April 1, 2021 to December 31, 2025 and terminal year estimate of the free cash flow to be generated by Indigo utilized in the analysis; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 7.00% to 8.50%; and (iii) Indigo's net debt as of March 31, 2021.

29. With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis for SWN*, the Proxy Statement fails to disclose: (i) the estimates of the unlevered free cash flow for SWN from April 1, 2021 to December 31, 2025 and terminal year estimate of the free cash flow to be generated by SWN utilized in the analysis; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 6.50% to 8.00%; (iii) the Company's net debt as of March 31, 2021; and (iv) the Company's and pro forma company's fully diluted outstanding shares utilized in the analysis.

30. With respect to Goldman Sachs's *Illustrative Present Value of Future Share Price Analysis of SWN*, the Proxy Statement fails to disclose: (i) quantification of the inputs and

assumptions underlying the discount rate of 8.60%; (ii) the Company's net debt; and (iii) the Company's and pro forma company's fully diluted outstanding shares utilized in the analysis.

31. The omission of this information renders the statements in the "Certain Unaudited Forecasted Financial Information" and "Opinion of SWN's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman Sachs's Potential Conflicts of Interest***

32. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Goldman Sachs.

33. The Proxy Statement sets forth in connection with the Proposed Transaction Goldman Sachs "may receive an additional fee of up to $3,000,000 at SWN's discretion." Proxy Statement at 114. The Proxy Statement, however, fails to disclose the agreed parameters for such additional discretionary fee, the criteria Goldman Sachs needs to satisfy to receive the additional fee, and whether the Company anticipates paying Goldman Sachs the additional fee.

34. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

35. The omission of this information renders the statements in the "Opinion of SWN's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

36. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Stock Issuance Proposal, Plaintiff and the other stockholders

of SWN will be unable to make a sufficiently informed voting decision in connection with the Stock Issuance Proposal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

37. Plaintiff repeats all previous allegations as if set forth in full.

38. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

39. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about SWN's, Indigo's and the pro forma company's financial projections, the data and inputs underlying Goldman Sachs's financial analyses and Goldman Sachs's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Stock Issuance Proposal.

41. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43. Plaintiff repeats all previous allegations as if set forth in full.

44. The Individual Defendants acted as controlling persons of SWN within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SWN, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, SWN stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of SWN, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Stock Issuance Proposal, unless and until defendants disclose and disseminate the material information identified above to SWN stockholders;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  August 13, 2021                                              **WEISSLAW LLP**

By   /s/ Richard A. Acocelli
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*